UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                            CASE NO. 08-11041

WALTER TRAVIS MATTIX                                           SECTION "B"

    DEBTOR                                                              CHAPTER 7
******************************************************************************
RONALD HALL
    Plaintiff
                                                     ADV.P. NO.  08-1087

versus

WALTER TRAVIS MATTIX
    Defendant

## MEMORANDUM OPINION

This matter was tried on March 19, 2009 on the complaint of the plaintiff, Ronald Hall ("Hall") against the debtor Walter Travis Mattix ("Mattix") to except a debt from discharge under 11 U.S.C. 523(a)(6).  For the reasons set forth below, this court finds that Hall's injury was not caused by willful and malicious actions and therefore does not qualify as a 11 U.S.C. 523(a)(6) discharge exception.

### I.    Factual Background

At 3:00 or 4:00 in the afternoon on Thanksgiving, November 27, 2003, Hall drove his two children, Danielle, age eight, and Chantel, age five, to the home of their mother, Cathy Hall Mattix.  At the time, Hall and Mrs. Mattix were divorced and Mrs. Mattix was married to and living with Mattix.  Mrs. Mattix was not at home when Hall arrived with

their daughters.[1] Mattix approached the truck and the two men began arguing.[2] Eventually, the argument led to a physical fight. The parties do not dispute that Mr. Hall dominated the fight. As the fight was occurring, Mrs. Mattix pulled up to the house and tried to restrain Hall in order to break up the fight. When Mrs. Mattix succeeded in pulling Hall off of Mattix, Mattix then entered his home, got his pistol and shot Hall in the arm.

The facts other than those briefly stated above are highly controverted. Hall's version of the argument and fight is as follows. He testified that when he arrived at the Mattix home, he parked and turned off the engine of his truck, and that the window was down on the driver's side of the truck. He further stated that Mattix came out of the mobile home with his shirt off, cursing and spoiling for a fight. After three to four minutes of Mattix's cursing in front of the two children in the truck, Hall decided to exit his truck, but before he could do so, Mattix "sucker punched" him through the window. Hall was blinded, he said, by the punch but Mattix did not follow up; instead Mattix just stood there. Hall must have recovered quite well, because he and Mattix commenced fighting and fought for approximately eight to ten minutes. Hall fought a much better fight as he had Mattix on the ground but states that he got off Mattix twice and tried to end the fight. According to Hall, Mattix kept coming back for more. Hall alleges that after about ten minutes of fighting, Mrs. Mattix arrived and jumped on top of him, pulling him off of Mattix. He states that she

---

[1] Hall brought the girls to the Mattix home despite the fact that he knew Mrs. Mattix was not at home and there was an order providing that Hall was only to exchange custody of the children at the sheriff's office or directly with Mrs. Mattix.

[2] Mattix and Hall dispute who started the argument.

told Mattix to get his gun and shoot Hall.  Hall testified that when he realized that Mattix was going after his gun, he entered his truck and started to drive away.  Hall alleges that as he drove away, Mattix fired the gun and shot Hall in the arm when Hall was approximately fifty yards away from where the fight had taken place.

This version of events is highly contested by Mattix who denied that he started the fight by punching Hall through the window of the truck.  Mattix admitted that Hall had him on the ground and under his control at least three times.  Mattix also asserts, however, that instead of trying to end the fight, Hall continued to beat him and that he feared for his life.  Mattix testified that his fear was justified because Hall said that he was going to kill him, Hall was trying to break his neck, Hall had his finger in Mattix's eye socket, and he believed that Hall would have killed him if Mrs. Mattix had not arrived and managed to pull Hall off of him.

Equally conflicting are the two stories about Mattix getting his pistol and where Hall was located when Mattix shot him.  According to Mattix, when Mrs. Mattix succeeded in pulling Hall off him and he went in the trailer to get the gun, Hall was approaching the door to the mobile home and was only seven to eight feet from the steps when he shot him.  Mattix testified several times that he feared for his life and feared for the safety of his family, especially Mrs. Mattix and his two year old child Taylor, who was in the trailer.  He feared that Hall was coming in to the home.  He admitted however, that he did not request that Hall leave or fire a warning shot.  His consistent testimony was that Hall was near the steps of the mobile home, and that he felt Hall was coming in the home when he shot him.

Hall's version of the shooting was that when Mrs. Mattix pulled him off Mattix and Mattix went in the home, he knew Mattix was going for his pistol. Hall claims he was in his truck driving away, that his older daughter was running parallel to the truck towards Mattix's mother's house, that he saw Mattix in the rear mirror of the truck with the younger daughter and Mrs. Mattix, that he was about fifty yards away when the shot hit him in the arm. The bullet exited his arm, hit the steering wheel and then the turn signal of his truck. He managed to drive about half a mile to a preacher's house where he passed out.

Back at the mobile home, the police arrived and took Mattix to the hospital. He was arrested that night. Hall was never arrested. Mattix's injuries from the fight were quite serious. Two days after he was released from the hospital that Thanksgiving night, he suffered kidney failure and was readmitted to the hospital where he remained from November 30 to December 9. Fortunately, his kidneys recovered.

Tom Anderson, an investigator with the Washington Parish Sheriff's Department testified that because 1) it was raining at the time of the incident, and 2) Hall's truck was removed by his relatives and cleaned prior to Anderson's being able to examine it, he could not determine whether Hall had in fact been shot in the truck as he claimed or right outside the trailer as Mattix claimed.[3]

The other witnesses at the trial added little to this sad story. Mattix's mother, who lived about 300 feet from the mobile home testified that she did not hear any shot or see the

---

[3] Exhibit 2, Transcript of proceedings in the 22nd JDC, Parish of Washington on May 17, 2004 at pp. 54-60.

4

shooting. She stated that Thanksgiving afternoon, Hall's oldest daughter rang her doorbell and said, "Travis shot my dad."[4] She further testified that Hall came flying by her house in his truck, ran over her flowerbed and kept going at a fast speed.

The two Hall girls, Danielle and Chantel, were 13 and 11 years old respectively at the trial. At the suggestion of Hall's attorney, and with the agreement of all parties, the testimony of the two girls was taken in open court and on the record, but without the presence of any of the parties.[5] Their testimony supported their father's version of the events.

## II. State Court Proceedings

Hall and Mattix each sued each other in state court for personal injuries based on the same set of facts. The Twenty-Second Judicial District Court of the State of Louisiana held in favor of Mattix, concluding that he had "sufficient reason to fear for his life, and that getting his pistol was justified under the circumstances."[6] The court awarded Mattix a judgment of $2,500 in general damages resulting from Hall beating Mattix. The state court did not award medical costs as they were not sufficiently proved. The state court did not award anything to Hall in his cross claim for his injuries resulting from the shooting. At the

---

[4] Evidently the two Hall girls remained friendly with Mattix's mother, whom they called "Granny" and visited after the Thanksgiving shooting.

[5] Actually the suggestion was that the girls be questioned in chambers with only the judge present, but the court decided it would be preferable to have their testimony on the record. The older girl gave a narrative account. The younger girl agreed. The judge asked a few questions. There was, of course, no cross-examination.

[6] Twenty-Second Judicial District Court, Amended Reasons For Judgment, p. 2.

time of the trial in this court, the state court judgment was being appealed by Hall.

Additionally, criminal charges were initially brought in state court against Mattix for the shooting, but the state apparently declined to prosecute the case.[7] It does not appear that Hall was criminally charged for beating Mattix. Thus, even though there is currently no debt that Mattix owes to Hall, Hall brought this dischargeability claim under 11 U.S.C. 523(a)(6), alleging that Mattix's behavior was "willful and malicious" and therefore Mattix owes Hall a debt for his injuries that can not be discharged.

### III. Legal Analysis

Section 523(a)(6) of the Bankruptcy Code provides that a debt "for willful and malicious injury by the debtor to another" is not dischargeable.[8] Because the aim of the Bankruptcy Code is to give debtors a fresh start, discharge exceptions should be narrowly construed in favor of the debtor.[9] Therefore, the party asserting that a debt is nondischargeable must prove its claim by a preponderance of the evidence.[10]

The United States Supreme Court has held that an injury is willful, causing nondischargeability, where there is, "a deliberate or intentional *injury*, not merely a

---

[7] The parties did not make clear the exact disposition of the criminal case to this court, but Mattix was not convicted of any crime in connection with the incident.

[8] 11 U.S.C. § 523(a)(6).

[9] *In re Miller*, 156 F.3d 598, 602 (5th Cir. 1998).

[10] *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Keaty*, 397 F.3d 264, 270 (5th Cir. 2005).

deliberate or intentional *act* that leads to injury."[11] The United States Court of Appeal for the Fifth Circuit has held that an injury is willful and malicious where the debtor had either an objective substantial certainty of causing harm or a subjective motive to cause harm to the injured party.[12] Simply put, a willful and malicious injury results from an act performed with the intent to cause injury, not from an act performed intentionally that results in injury.[13]

The facts here are complicated, and the court has had much difficulty determining which evidence it finds credible. Essentially it boils down to the sworn testimonies of Hall and Mattix, which differ substantially. The court examines two Fifth Circuit cases involving personal injury, *Matter of Delaney*, 97 F.3d 800 (5th Cir. 1996) and *Matter of Vollbracht*, 276 Fed.Appx. 360 (5th Cir. 2007).[14]

In *Delaney*, the debtor intentionally loaded a shotgun, took it with him to confront a man with whom he had previously had a fight. The other man was in a car in the debtor's driveway. With his finger on the trigger, the debtor twice tapped the shotgun on the

---

[11] *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

[12] *In re Miller*, 156 F.3d 598, 606 (5th Cir. 1998).

[13] *State of Tex. By and Through Bd. of Regents of University of Texas System v. Walker*, 142 F.3d 813, 823 (5th Cir. 1998); *Matter of Delaney*, 97 F.3d 800, 803 (5th Cir. 1996).

[14] *Vollbracht* is not a published opinion and, therefore, is not precedent. The court cites it, however, because it is the only opinion that the court could locate involving the claim of self-defense in a § 523(a)(6) dischargeability case.

windshield of the man's car.[15]  The gun went off and blinded the man.[16]  The court held that the injury was not willful or malicious, however, because although the injury may have been foreseeable, the debtor did not intend, and his acts were not substantially certain, to cause the injury.[17]

In *Vollbracht*, when the plaintiff, Berry, approached the debtor, the debtor punched Berry several times.  The debtor was convicted of simple assault, and Berry sued the debtor, obtaining a state court default judgment.  The bankruptcy court found the debt dischargeable, and Berry appealed.  The Fifth Circuit held that punching someone in the face was objectively very likely to cause harm.  The Fifth Circuit remanded the case to the lower court holding that it had not correctly applied the objective aspect of the test for willful and malicious injury.  The Fifth Circuit also held, however, that the lower court could, and should, consider the issue of self-defense raised by the debtor when applying the objective aspect of the test.  The Fifth Circuit stated:

> The transcript reveals that the lower courts were concerned mainly that Vollbracht's punches were delivered in self-defense, or at least that Vollbracht was less culpable given Berry's actions.  We similarly recognize that an injury levied as a legitimate response to someone else's actions is usually the result of a "subjective motive to cause harm" and actions that can have an "objective substantial certainty" of causing harm.  Yet, such an injury cannot be "willful and malicious" under § 523(a)(6).  Consequently we hold that our two-part test must countenance the actions of the injured party.  That is, for an injury to be "willful and malicious" it must satisfy our two-part test

---

[15]  *Id*. at 801-03.

[16]  *Id*. at 802.

[17]  *Id*. at 802-03.

and not be sufficiently justified under the circumstances to render it not "willful and malicious."

Applying the rationale of these two decisions to the facts of this case, the court cannot find that Mattix acted to cause a willful and malicious injury within the meaning of § 523(a)(6). If the court believes Mattix's version of the events, which it is inclined to do, Mattix was acting in self-defense when he shot Hall, and given the severity of the beating he received from Hall, the threats to kill him that he states he heard Hall make, and the fact that he believed Hall was attempting to enter his home where his young child was located, it does not seem unreasonable that Mattix reacted by firing his weapon at Hall.

On the other hand, even if the court is inclined to believe Hall's version of the events, which it is not, this is much like the incident in *Delaney*, in that when Mattix fired his pistol, it was foreseeable that he might hit Hall, but it was not substantially certain. According to Hall's version of the story, when Mattix fired his pistol at Hall, Hall was driving in a moving truck approximately fifty yards away.[18] Also, the court considers Mattix's weakened condition as a result of the beating. Given these circumstances, it was not substantially certain that Mattix's one shot would hit and injure Hall. As to the other prong of the test, Hall has failed to prove that Mattix intentionally aimed for and injured Hall.[19]

---

[18] Hall's trial testimony. The court notes that in the state court transcripts that were entered into evidence as Exhibits 1 and 2, Hall testified that he was 20 to 25 yards away on December 22, 2003 and that he was 25 to 30 yards away on May 17, 2004. The courts gives greater weight, however, to Hall's live testimony that he was 45 to 50 yards away when he was shot.

[19] As opposed to firing in Mr. Hall's general direction a shot that inadvertently struck Mr. Hall in the elbow.

Because Hall has failed to prove that Mattix acted with the substantial certainty of injuring or the intent to injure Hall, the injury was not willful and malicious.

Finally, the court notes that it is also swayed by the fact that Hall has no judgment for a debt against Mattix, and that the state court found for Mattix and against Hall in the suits for damages. This is true even though the state court judgment is still on appeal, and this court has only the judgment of the trial court to rely on in making this assessment.

## IV.    Conclusion

For the reasons set forth in this memorandum opinion, the court finds that Hall's injury was not willful and malicious and therefore does not qualify as a 11 U.S.C. 523(a)(6) discharge exception. Therefore, Mattix is discharged from any debt related to the November 27, 2003 shooting.

New Orleans, Louisiana, September 18, 2009.

Jerry A. Brown
U.S. Bankruptcy Judge